In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2493

JOSE HERNANDEZ,

*Plaintiff-Appellant*,

*v.*

THOMAS J. DART, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 1236 — **James B. Zagel**, *Judge.*

ARGUED JANUARY 13, 2016 — DECIDED FEBRUARY 26, 2016

Before WOOD, *Chief Judge,* and BAUER and HAMILTON,
*Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellant, Jose Hernandez,
a disabled prisoner, sued Defendants-appellees, Sheriff
Thomas J. Dart and Cook County (collectively "Defendants"),
under 42 U.S.C. § 1983 for excessive force and deliberate
indifference to his medical needs. These two claims stemmed
from his treatment while he was a pre-trial detainee in the
custody of the Cook County Department of Corrections

("CCDOC"). The district court granted summary judgment in favor of Defendants, holding that Hernandez failed to exhaust his administrative remedies, as the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires. We hold that Hernandez did indeed exhaust his remedies and remand the case so that its merits may be heard.

## I. BACKGROUND

An April 22, 2012, car accident essentially rendered Hernandez a quadriplegic. He has no use of his legs and limited use of his arms; importantly, he cannot write. The passenger in Hernandez's car died as a result of the crash. Hernandez was driving under the influence of drugs and alcohol at the time of the accident, and was convicted in May 2014 of aggravated driving under the influence involving an accident causing death. Law enforcement did not take him into custody for his role in the accident until March 9, 2013. On that day, Hernandez was hospitalized at Thorek Memorial Hospital for treatment of pressure wounds that had developed during his stay at a nursing home.

Under Cook County Sheriff's Office policy, correctional officers must shackle one hand and one foot of a hospitalized pre-trial detainee to his or her hospital bed. Additionally, two armed correctional officers must guard the detainee at all times. When Hernandez came into custody at Thorek on March 9, he was duly shackled and guarded. This continued when the CCDOC briefly transferred Hernandez to Cook County Jail on March 14. He was specifically sent to the facility of Cermak Health Services ("Cermak"), the on-site health care provider at Cook County Jail. That same day, Cermak

personnel decided to transfer Hernandez to Stroger Hospital, where he remained from March 14, 2013, to April 18, 2013; the shackling continued. Hernandez claims that the shackling stunted his recovery: the doctors had instructed him to move every two hours to help his sores heal, but he was unable to do so while shackled to the bed. Hernandez orally complained about the shackling to correctional and hospital personnel, but the condition remained.

There is a CCDOC Inmate Information Handbook (the "Handbook") that enumerates the CCDOC's grievance process. CCDOC relief workers visited Hernandez periodically while he was hospitalized, but never gave him the Handbook or told him about the grievance process. He states that he learned about the process from other Cook County Jail inmates after his discharge from Stroger on April 18.

According to CCDOC policy, an inmate must file a written grievance within fifteen days of the alleged incident. Written grievance forms are available in all living units throughout the jail, and an inmate can obtain a form from a CCDOC relief worker or other jail personnel upon request. Once the inmate has received the response to his grievance from the relevant party (for example, the CCDOC or Cermak), the inmate has fourteen days to appeal the decision.

Hernandez never filed a written grievance regarding his shackling at Thorek, Cermak, and Stroger. After discharge from Stroger on April 18, he entered the jail general population. While at the jail, he complained about the medical care that he was receiving. Unable to write, he had fellow inmates assist him in writing and filing various grievances.

One of these written grievances is relevant to this appeal. On August 3, 2013, Hernandez filed a grievance stating that Cermak nursing staff refused to help him move between his geriatric, or "jerry," chair in his room and his bed. His grievance states that the incident in question occurred on August 2, 2013. Inability to move between the chair and the bed would cause pressure sores to worsen, and Hernandez could not move without assistance. The Nurse Manager for Cermak responded to Hernandez's grievance, saying that Cermak staff had assisted Hernandez "in getting ready (washed up, dressed, and transfer[red] [between the jerry chair and the bed])." Hernandez received this response on September 11, 2013, and appealed on September 17, 2013.

On February 19, 2014, Hernandez filed this suit in federal district court. Hernandez amended his complaint multiple times, and presently asserts two claims: (1) excessive force arising from his shackling while at Thorek, Cermak, and Stroger; (2) deliberate indifference to his medical needs for failing to help him move between his jerry chair and his bed on August 2, 2013.

On December 30, 2014, Defendants moved for summary judgment only on the issue of exhaustion. Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the district court ordered an evidentiary hearing to determine if Hernandez had exhausted his administrative remedies. The hearing was on June 18, 2014. At the conclusion of the hearing, the district court stated that Hernandez's oral complaints about the shackling constituted a proper grievance, but ultimately held that Hernandez had not exhausted his administrative remedies. The district court granted summary judgment for

Defendants, orally dismissing the case without prejudice. The corresponding docket entry, dated July 2, 2014, states that Hernandez had "failed to exhaust administrative remedies," that his claim was dismissed without prejudice, and that the case was "terminated."

## II.  DISCUSSION

We disagree with the district court's grant of summary judgment in favor of Defendants for failure to exhaust, and hold that the district court should hear both of Hernandez's claims on the merits. First, regarding the excessive force claim, the grievance process was unavailable to Hernandez during the relevant period. This lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court. Second, regarding the deliberate indifference claim, Hernandez followed the CCDOC grievance process, and therefore properly exhausted his administrative remedies under the PLRA. Both claims are properly in federal court.

### A.  Standard of Review

We review dismissals for failure to exhaust administrative remedies *de novo. E.g., Reynolds v. Tangherlini*, 737 F.3d 1093, 1098–99 (7th Cir. 2013) (citations omitted). "Failure to exhaust is an affirmative defense," and Defendants have the burden of proof. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005), and *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999)). Further, at the summary judgment phase, we construe the facts in the light most favorable to the non-moving party—here, Hernandez. *Rahn v. Bd. of Trustees of N. Ill. Univ.*, 803 F.3d 285, 287 (7th Cir. 2015) (citation omitted); *Kaba v. Stepp*, 458 F.3d 678, 681 (7th

Cir. 2006) (citation omitted). Here, Defendants have failed to produce evidence that Hernandez did not exhaust his administrative remedies.

### B. District Court's Dismissal Was Final

As a threshold matter, Defendants argue that because the district court dismissed Hernandez's claims without prejudice, its order was not final and we have no jurisdiction over the appeal. *See* 28 U.S.C. § 1291 (federal courts of appeal have jurisdiction over appeals "from all final decisions of the district courts of the United States"). Defendants are correct in a general sense, because "[n]ormally, a dismissal without prejudice is not a final order for purposes of appellate jurisdiction under 28 U.S.C. § 1291." *Kaba*, 458 F.3d at 680 (citing *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003)).

But this general rule does not apply in this case. Instead, we deem the district court's dismissal without prejudice to be final for the purposes of § 1291 jurisdiction. There are two grounds for finality. First, it would be impossible at this point for Hernandez to exhaust his administrative remedies and thereafter amend his complaint. *See Hoskins*, 320 F.3d at 763 (noting that "if an amendment would be unavailing, then the case is dead in the district court and may proceed to the next tier"). The inability to amend is particularly meaningful in dismissals for failure to exhaust, where timeliness under respective agency procedure is so critical. *See Kaba*, 458 F.3d at 680 (where it is no longer possible for prisoner plaintiff "at [so] late [a] date" to exhaust and "no amendment could resolve the problem," dismissal without prejudice for failure to exhaust "is effectively a final order"). The incidents of which Hernandez

complained in this case occurred in 2013 and required a written grievance within fifteen days. Those respective deadlines have long since passed, such that an amendment would be unavailing and would not resolve the problem.

Second, there are multiple indicia that the district court was finished with the case. *See Taylor-Holmes v. Office of Cook Cnty. Pub. Guardian*, 503 F.3d 607, 609–10 (7th Cir. 2007) (quoting *Chase Manhattan Mortg. Corp. v. Moore*, 446 F.3d 725, 726 (7th Cir. 2006)) (other citations omitted) (where there are indicia that the district court is "'finished with the case,'" a dismissal without prejudice will "end[] the suit so far as the district court is concerned"). The true test for determining finality under 28 U.S.C. § 1291 "is not the adequacy of the judgment[,] but whether the district court has finished with the case." *Moore*, 446 F.3d at 726; *see also Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1021 (7th Cir. 2013) (dismissal not final where district court allowed "multiple amendments to the original complaint, making it clear that it was not finished with the case" (citation omitted)). Where a district court is not "merely telling the plaintiff 'to patch up the complaint, or take some other easily accomplished step,'" we can impute finality to the court's dismissal and hear the appeal. *Taylor-Holmes*, 503 F.3d at 610 (quoting *Strong v. David*, 297 F.3d 646, 648 (7th Cir. 2002)).

Here, at the *Pavey* hearing, after saying that it was dismissing the case, the district court repeatedly told Hernandez to "take [the case] upstairs"—that is, to appeal the

case to this court.[1] In the corresponding docket entry, the district court states, "Civil case terminated." These actions indicate that the district court was finished with the case, and that if Hernandez wanted to pursue his claim further, he needed to do so through the appellate process.

Thus, the district court's dismissal without prejudice was "effectively a final order." *Kaba*, 458 F.3d at 680. We have jurisdiction over the appeal.

### C.  Exhaustion of Grievances

Regarding exhaustion specifically, Hernandez properly navigated the requirements of § 1997e(a) of the PLRA. A prisoner cannot bring a cause of action under federal law regarding prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006) (holding that "complet[ing]   the   administrative   review   process"   is   "a precondition to [a prisoner] bringing suit in federal court"). Federal courts strictly enforce this requirement, and a prisoner fulfills this duty by adhering to "the specific procedures and deadlines established by the prison's policy." *King*, 781 F.3d at 893 (citing *Woodford*, 548 U.S. at 93); *see also Maddox v. Love*, 655 F.3d 709, 720–21 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007) (noting that "'the applicable procedural rules' that a prisoner must properly exhaust are defined not by the PLRA, but by the prison grievance process itself")). Therefore, Hernandez needed to comply with the CCDOC grievance

---

[1]  The Seventh Circuit is located on the top two floors of the same building where the district court in this case is located.

process: he had to have filed any grievance within 15 days of the alleged incident, and he had to have appealed within 14 days of receipt of any administrative response to the grievance. Because Hernandez's grievances involve different time frames and address different conduct by CCDOC personnel, they are not alike in kind, and we analyze each separately. *See Kaba*, 458 F.3d at 685 (noting that because "all grievances are not alike, … a more discriminating analysis is necessary" that itemizes and analyzes each grievance separately).

### 1. Excessive Force Claim

Hernandez's excessive force claim is not subject to the PLRA exhaustion requirement because no administrative remedies were "available" to him during the relevant exhaustion period. *See* 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 93. "If administrative remedies are not 'available' to an inmate, then an inmate cannot be required to exhaust." *Kaba*, 458 F.3d at 684; *see also King*, 781 F.3d at 896 ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."). Administrative remedies are primarily "unavailable" to prisoners where "affirmative misconduct" prevents prisoners from pursuing administrative remedies. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (remedies unavailable where prison officials "do not respond to a properly filed grievance")*; see also Thomas v. Reese*, 787 F.3d 845, 847–48 (7th Cir. 2015) (remedies unavailable where correctional officer tells prisoner that prisoner cannot file grievance when in fact prisoner can do so); *Kaba*, 458 F.3d at 680, 686 (remedies unavailable where prisoner presents evidence that prison personnel have "denied [prisoner] grievance forms, threatened him, and solicited other

inmates to attack him in retaliation for filing grievances"); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (remedies unavailable where prison personnel prevent prisoner access to grievance forms).

But "unavailability" extends beyond "affirmative misconduct" to omissions by prison personnel, particularly failing to inform the prisoner of the grievance process. *See King*, 781 F.3d at 895–96 (remedies unavailable where prisoner transferred between two correctional facilities had no access to grievance process and where later allotted time for filing grievance was impracticable); *White v. Bukowski*, 800 F.3d 392, 397 (7th Cir. 2015) (remedies unavailable where prisoner was "[u]ninformed about any deadline for filing a grievance"). It is not incumbent on the prisoner "to divine the availability" of grievance procedures. *King*, 781 F.3d at 896. Rather, prison officials must inform the prisoner about the grievance process. *See Kaba* 458 F.3d at 684; *King*, 781 F.3d at 896. The prison cannot shroud the prisoner in a veil of ignorance and then hide behind a failure to exhaust defense to avoid liability. *See King*, 781 F.3d at 893 ("Prison authorities cannot immunize themselves from suit by establishing procedures that in practice are not available." (citation omitted)).

Here, Defendants failed to inform Hernandez of the grievance process while he was hospitalized. This removes the exhaustion requirement for his excessive force claim. Hernandez alleges that he was shackled to his hospital bed during his stays at Thorek, Cermak, and Stroger from March 9, 2013, to April 18, 2013. He states that no one gave him the Handbook during this period, and that no one told him about the CCDOC grievance process. The shackling ended when he was

discharged from the hospital on April 18. 2013. This means that Hernandez had until May 3, 2013, to file his grievance. But there is no evidence that he knew about the grievance process during this time period, and Defendants have not produced any evidence to the contrary. Because Defendants have failed to carry their burden, we hold that the grievance process was unavailable to Hernandez during the relevant period. The PLRA's exhaustion requirement does not apply.

A final note. The district court found that Hernandez's oral complaint about the shackling constituted a valid grievance. This conclusion about the efficacy of an oral grievance was, in the end, academic. The determinative issue is whether the CCDOC informed or failed to inform Hernandez of the grievance process. *See King*, 781 F.3d at 896. If the prison had informed him of the process, he would have needed to exhaust in the manner specified—that is, he must have filed in writing. But CCDOC personnel did not inform him of the grievance process. Accordingly, the grievance process was unavailable, lifting the exhaustion requirement under the PLRA. *Kaba*, 458 F.3d at 684. The effect of the oral complaint is of no moment.

In conclusion, Hernandez's excessive force claim is properly in federal court, and the district court erred by granting Defendants' motion for summary judgment.

### 2. Deliberate Indifference Claim

Hernandez's deliberate indifference claim regarding the refusal to help him move between his jerry chair and his bed is also properly in federal court, simply because he exhausted the available administrative remedies. Unlike the excessive force claim, Hernandez was aware of the grievance process

when the alleged incident with prison personnel occurred on August 2, 2013. Thus, administrative remedies were "available" to him, and he was required to exhaust these remedies under the PLRA. *See* 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 93. Specifically, he had to file his original grievance within fifteen days of the alleged incident, and had to file a subsequent appeal within fourteen days of receipt of the administrative response to the grievance.

Hernandez complied with this procedure. He filed his grievance on August 3, 2013. In the grievance, he alleged that the incident in question occurred on August 2, 2013. His filing was well within the 15-day period outlined in the CCDOC grievance process. Further, he received the Cermak response to his complaint on September 11, 2013, and filed his appeal on September 17, 2013. This was also well within the allotted period. Defendants have not produced evidence that contradicts these facts and have not carried their burden of demonstrating failure to exhaust. Hernandez exhausted his administrative remedies and the district court erred in granting summary judgment for Defendants on the deliberate indifference claim.

## III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND the case for further proceedings.