NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 9, 2016[*]
Decided November 10, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-2678

| | |
|---|---|
| JOSEPH N. WARD II, <br>     *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:14-cv-00509-MJR-SCW |
| JOHN HOFFMAN, et al. <br>     *Defendants-Appellees*. | Michael J. Reagan, <br> *Chief Judge*. |

**O R D E R**

Joseph Ward, an Illinois prisoner, brought this suit under 42 U.S.C. § 1983, asserting that John Hoffman, a prison supervisor, used excessive force by choking him until he lost consciousness while two onlooking guards failed to intervene. The district court granted summary judgment for the officers, concluding that Ward failed to exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). We affirm.

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

On June 10, 2012, a heated argument between Ward and his cellmate at the Menard Correctional Center prompted Lieutenant Hoffman and two officers, Timothy Morris and Adam Tope, to respond and order both prisoners into handcuffs. At this point, Ward's report of the event diverges from Hoffman's, but in reviewing the materials at summary judgment we consider the facts in the light most favorable to Ward, the non-moving party. *Huang v. Cont'l Cas. Co.*, 754 F.3d 447, 450 (7th Cir. 2014). According to Ward, he complied with the handcuff order but then grew short of breath and reached for his asthma inhaler. He was ordered by Hoffman to stop moving and to walk to the front of his cell. Hoffman then entered the cell, pepper-sprayed Ward, and "manhandled" him until he lost consciousness. Ward was taken to the prison's healthcare unit, then to an outside hospital. There he was examined by physicians, who recorded that his injury likely was caused by a chokehold.

Three days later Ward awoke in the healthcare unit at Pontiac Correctional Center, where he spent eight days under observation before being taken to a disciplinary hearing held by an adjustment committee. The hearing was based on a disciplinary report prepared by Hoffman, who accused Ward of disobeying his order and swinging at him, prompting his use of pepper spray. The committee found Ward guilty of disobeying an order and assaulting a staff member and recommended that Ward lose one year of good-conduct credit.

Ward prepared three inmate grievances about the incident and subsequent proceedings. In late June Ward filed his first grievance, complaining about procedures relating to the disciplinary hearing, specifically the lack of notice, which, he believed, prevented him from preparing a defense that would have included testimony from another inmate who witnessed the incident. Relying on a hearing officer's recommendation, the facility's chief administrative officer denied this grievance. In late August, Ward filed a second grievance, which alleged for the first time that Hoffman used excessive force during the cell extraction. The following month Ward filed a third grievance that substantially repeated the allegations in the second grievance. None of these three grievances named Morris or Tope, though Ward said in the second grievance that he had trouble remembering the event and sought criminal investigations of "any other staff who were witnesses." Because Ward's second and third grievances complained about events at a facility other than the one where they were filed, these grievances were forwarded to the Administrative Review Board, ILL. ADMIN. CODE tit. 20, § 504.870. The Board considered all three grievances together, rejecting the first because there was no evidence of procedural violations, and refusing to consider the other two because more than 60 days had lapsed since the incident.

Ward then brought this suit under § 1983, asserting that Hoffman used excessive force against him and that Morris and Tope failed to intervene. Ward asked the district court three times to recruit counsel to represent him, *see* 28 U.S.C. § 1915(e)(1). The court denied the first request because Ward did not demonstrate that he had contacted any attorneys, and then it denied the remaining requests altogether because Ward appeared competent to litigate the case, which had yet to proceed to discovery, because he had "adequately expressed the factual and legal bases for his claims."

The defendants moved for summary judgment based on Ward's failure to exhaust his administrative remedies, and Ward asked the court to delay its ruling until the defendants had produced requested documents and interrogatories. The court denied Ward's request because the summary-judgment motion addressed only exhaustion of administrative remedies, and the documents he sought about excessive force were therefore irrelevant.

The district court granted the defendants' motion for summary judgment based on Ward's failure to exhaust administrative remedies. In Ward's first grievance, the district court noted, he complained only about the procedures used by the adjustment committee, and did not mention excessive force or the defendants. As for the second and third grievances, these did allege that Hoffman used excessive force, but Ward had not filed them until more than 60 days after the incident, making them untimely under Illinois law. The court also acknowledged that the second grievance did not mention Tope or Morris.[1]

On appeal Ward ignores the district court's exhaustion analysis and generally addresses only the substance of his excessive-force claim. But all of his claims are procedurally barred if, as the district court found, he failed to properly exhaust administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Hernandez v. Dart*, 814 F.3d 836, 841 (7th Cir. 2016). The PLRA requires a prisoner to file grievances in compliance with the state's grievance procedures. *Woodford v. Ngo*, 548 U.S. 81, 94 (2006); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Illinois law specifies that a prisoner's grievances must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of . . . the complaint." ILL. ADMIN. CODE tit. 20, § 504.810(b). This information is necessary to provide prison officials a fair opportunity to address the complaint. *Maddox v. Love*,

---

[1] Ward also neglected in his third grievance to name Tope or Morris.

655 F.3d 709, 722 (7th Cir. 2011). Additionally, a grievance is untimely if it is not filed within 60 days of the problem giving rise to the grievance, *see* ILL. ADMIN. CODE tit. 20, § 504.810(a), subject to exceptions not present in this case. The district court here correctly concluded that Ward failed to properly exhaust his administrative remedies. Although Ward filed three grievances, none satisfied Illinois's exhaustion requirements. His first did not mention excessive force or the defendants, and thus could not have put administrators on notice of his claims, as required in Illinois, *see Turley*, 729 F.3d at 650, and Ward filed his second and third grievances after Illinois's 60-day deadline without proposing good cause for his untimeliness.

Next Ward contends that the district court erred by denying his request for extra time to obtain discovery before responding to the summary-judgment motion. It is true that Federal Rule of Civil Procedure 56(d) permits a district court to defer consideration of summary-judgment motion to allow the nonmovant to supplement his response with discovery. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627–28 (7th Cir. 2014). But the non-movant must explain in an affidavit or declaration why he cannot adequately respond to the summary-judgment motion without further discovery, *Kallal v. CIBA Vision Corp.*, 779 F.3d 443, 446 (7th Cir. 2015), and Ward did not provide any such justification. And as the district court correctly observed, the requested discovery materials pertained only to the merits of the case, and not the exhaustion issue that undergirded the court's summary judgment ruling. *See Cent. States, Pension Fund v. Waste Mgmt. of Mich., Inc.*, 674 F.3d 630, 637 (7th Cir. 2012).

Finally, Ward challenges the denial of his requests for counsel, maintaining that he was indigent and lacked legal training. When deciding whether to recruit counsel, district courts must ask: (1) has the plaintiff made reasonable efforts to retain counsel, and if so, (2) does the plaintiff appear competent to litigate the case, given its difficulty? *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014); *Pruitt v. Mote*, 503 F.3d 647, 659 (7th Cir. 2007) (en banc). We will overturn a decision denying recruitment only if an error in this analysis prejudiced the plaintiff. *Pruitt*, 503 F.3d at 659. The district court properly denied Ward's requests, pointing out that his prior filings reflected his competence to litigate the case. And in any event, given his failure to exhaust administrative remedies, Ward cannot show that the assistance of a lawyer could have affected the outcome of this case.

AFFIRMED.